**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DWIGHT BAZILE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-2404 |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

The plaintiffs, Dwight Bazile, Johnny Garrett, Mundo Olford, Trevin Hines, Dwight Allen, George Runnels, and Thomas Ward are African-American firefighters with the City of Houston Fire Department.  They have sued the City of Houston, alleging race discrimination in the promotional examinations for the ranks of Junior Captain and Senior Captain.  The plaintiffs assert causes of action under 42 U.S.C. § 1981 and § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.  The City has moved to dismiss the § 1981 and § 1983 claims for failure to state a claim and the Title VII claim for failure to exhaust administrative remedies.  The City moved in the alternative for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.  (Docket Entry No. 3).  The plaintiffs responded.  (Docket Entry No. 4).

Based on the complaint, motion, and response, and on the applicable law, this court grants the City's motion to dismiss the § 1981 claim, denies the City's motion to dismiss the § 1983 and Title VII claims, and denies the City's motion for a more definite statement.  The reasons are explained below.

## I.      Background

The City of Houston Fire Department consists of approximately 3,500 uniformed members. Plaintiffs Bazile, Garrett, Hines, and Olford are firefighters with the rank of Lieutenant.  Plaintiffs Runnels, Allen, and Ward are firefighters with the rank of Captain.  All are African-American, and have been denied promotions within the Fire Department based on the results of promotional examinations.  (Docket Entry No. 1 at 2-3).

The City of Houston administers the promotional process for the Fire Department.  Under the City's procedure, promotions are awarded based on the results of a written, multiple-choice promotional examination taken by all candidates.  A candidate is considered qualified for a promotion if that candidate made a passing score on the examination.  Candidates with passing scores are ranked by score on an "eligibility list" prepared after each promotional examination and certified by the Civil Service Commission.  Each eligibility list remains in effect for two years after certification.  Promotions during that two-year period are awarded to the highest-ranked candidates on the eligibility list.  (*Id*. at 3).

On October 26, 2005, the City of Houston posted an announcement for a Junior Captain promotional examination.  438 candidates took the examination, 76 of whom were African-American. 362 candidates passed – 216 Caucasians, 94 Hispanics, and 51 African-Americans.  The eligibility list compiled from the results was certified on January 11, 2006 and expired on January 11, 2008.  During the two years that the eligibility list was in effect, 156 candidates were promoted to the rank of Junior Captain.  111 were Caucasian, 35 were Hispanic, and 10 were African-American.  Plaintiffs Bazile, Olford, Hines, and Garrett took and passed the Junior Captain examination but were not promoted.  (*Id*. at 7-8).

2

Also on October 26, 2005, the City of Houston posted an announcement for a Senior Captain promotional examination.  221 candidates took the examination, 15 of whom were African-American.  212 candidates passed – 166 Caucasians, 32 Hispanics, 13 African-Americans, and one Pacific Islander.  The eligibility list compiled from the results was certified on February 8, 2006 and expired on February 8, 2008.  During the two years that the eligibility list was in effect, 70 candidates were promoted to the rank of Senior Captain – 59 were Caucasian, 8 were Hispanic, 2 were African-American, and one was a Pacific Islander.  Plaintiffs Runnels, Allen, and Ward took and passed the examination but were not promoted.  (*Id*. at 3-5).

The plaintiffs allege that the promotion-to-pass ratio for the Junior Captain exam is 51.4% for Caucasians and 20% for African Americans, and that the promotion-to-participation ratio is 46.3% for Caucasians and 13.2% for African Americans.  (*Id*. at 8).  The plaintiffs allege that the promotion-to-pass ratio for the Senior Captain exam is 35.5% for Caucasians and 15.4% for African Americans, and that the promotion-to-participation ratio is 34.1% for Caucasians and 13.3% for African Americans.  (*Id*. at 4-5).  The plaintiffs allege that these metrics "violate[ ] the 4/5s Rule as set forth in the EEOC Uniform Guidelines on Employee Selection ("UGES"), as African-American candidates' selection rate is less than 80% of the selection rate for Caucasian candidates."  (*Id*. at 5, 8).

The plaintiffs allege that prior promotional examinations for the Junior and Senior Captain positions have demonstrated an adverse impact on African-Americans.  The plaintiffs allege that "[d]espite the record of adverse impact, [the City of Houston] has continued to prepare and administer [these] promotional examinations."  (*Id*. at 9).  The plaintiffs allege that the examinations are "not sufficiently job-related to be content valid" and that "[t]here are alternative measures that

have a demonstrably less adverse impact." (*Id*. at 8).  They allege that "[t]here are no data, studies or reports that establish that those candidates who rank higher on any given promotional examination actually perform better at the rank to which they are promoted," and that "[t]hrough studies and research in industrial/organizational psychology, it has been determined that written job knowledge examinations have little value in predicting who will perform better in promotions." (*Id*. at 9).  The plaintiffs seek a declaratory judgment of adverse impact and lack of content validity. They also seek an injunction ordering the promotion of the plaintiffs to the ranks for which they were tested, with seniority from the date of the first promotions from the eligibility list.  The plaintiffs also seek back pay for each, from the effective date of promotion, and compensatory damages (including for emotional distress).  (*Id*. at 11-12).

## II.    The Legal Standard for a Motion to Dismiss

The Supreme Court recently clarified the standard that applies to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), the Court stated that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974; *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1974).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d

397, 401 (5th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1964-65); *see also Sonnier*, 509 F.3d at 675 (quoting *Twombly*, 127 S.Ct. at 1965).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 127 S.Ct. at 1966) (internal quotations omitted).

## III.    Analysis

### A.      The § 1981 Claim

The City argues that § 1981 "does not provide an independent cause of action against local governments."  (Docket Entry No. 3 at 4).  Under *Jett v. Dallas Independent School District*, 491 U.S. 701, 731-732 (1989) and *Oden v. Okitbbeha County Mississippi*, 246 F.3d 458, 463-64 (5th Cir. 2001), "§ 1981 d[oes] not provide a separate cause of action against local government entities; . . . plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981."  (*Id*.).  In their response, the plaintiffs concede that this is the Fifth Circuit law, and that they brought the claim only to preserve it "should intervening court decisions affect the viability of circuit court decisions such as *Oden*."  (Docket Entry No. 4 at 2).  Because there is no dispute that the plaintiffs cannot bring a § 1981 claim against the City under current Fifth Circuit law, the § 1981 claim is dismissed.

### B.      The § 1983 Claim

The City argues that the plaintiffs have failed to plead a cause of action under § 1983 because they have not alleged that the violation "was caused by an official custom or policy."  (Docket Entry No. 3 at 5).  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of

> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1996).

"Holding a municipality or a municipal official acting in his official capacity liable under § 1983 requires a finding of a municipal custom or policy." *Lee v. Morial*, No. 01-30875, 2002 WL 971519, at *4 (5th Cir. Apr. 26, 2002) (unpublished); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "The official policy or custom must inflict the plaintiff's injury." *Lee*, 2002 WL 971519, at *4; *Monell*, 436 U.S. at 694. "To show an unconstitutional policy or custom, the plaintiff must (1) identify the policy or custom, (2) connect the policy or custom with the government entity, and (3) show that the policy caused the plaintiff's particular injury." *Lee*, 2002 WL 971519, at *4; *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984) (en banc). The Fifth Circuit has defined an official policy as "a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority." *Lee*, 2002 WL 971519, at *4 (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992)).

The plaintiffs allege racial discrimination resulting from the City's official "policies, procedures[,] custom and practice[s]" in the promotion of firefighters. They allege that the written examinations that underpin the City's promotion policy "are prepared and administered by the City of Houston Firefighter Civil Service Commission." (Docket Entry No. 1 at 3). They allege that the City's promotion examinations have a demonstrated adverse impact on African Americans, that the examinations are not sufficiently job related to be "content valid," do not predict better performance

6

by the candidates promoted, and are used instead of "alternative measures that have a demonstrably less adverse impact than cognitive job knowledge examinations." (*Id.* at 8-9). The plaintiffs have alleged an official policy, promulgated and enforced by the City, the application and enforcement of which caused the civil rights violations of which they complain. The City's motion to dismiss the § 1983 claim is denied.

### C.     The Title VII Claims

The City moved to dismiss the Title VII claims for failure to exhaust administrative remedies, arguing that the plaintiffs had not presented evidence of having obtained right-to-sue letters from the Department of Justice ("DOJ"). (Docket Entry No. 3 at 7); *see Hendrix v. Mem'l Hosps. of Galveston County*, 776 F.2d 1255, 1256-57 (5th Cir. 1985); *Garrett v. City of Houston*, 102 Fed. Appx. 863, 864 (5th Cir. 2004). In their response, the plaintiffs explain that they had forgotten to include the right-to-sue letters in their complaint. They attach right-to-sue letters for six of the plaintiffs: Bazile, Allen, Garrett, Hines, Olford, and Runnels. Although one plaintiff, Ward, has filed a discrimination charge with the EEOC, he has not yet received his right-to-sue notice. The plaintiffs argue that "it is proper to include Ward in the complaint as he is within the class of individuals contemplated by the EEOC charges filed by the other plaintiffs" and because each of the plaintiffs' complaints is filed "individually and on behalf of all others similarly situated." (Docket Entry No. 4 at 3).

The Fifth Circuit has held that "the receipt of a right-to-sue letter is a condition precedent, which on proper occasion may be equitably modified." *Pinkard v. Pullman-Standard, a Div. of Pullman, Inc.*, 678 F.2d 1211, 1218-19 (5th Cir.1982) ("[T]he receipt of a right-to-sue letter subsequent to the commencement of a Title VII action, but while the action remains pending,

satisfies the precondition that a plaintiff obtain statutory notice of the right to sue before filing a civil action under Title VII").  District courts "have held that '[e]xhaustion of administrative remedies is a statutory condition precedent to maintaining a Title VII action in district court, not a jurisdictional prerequisite.'" *Buyze v. Mukasey*, No. 3:07-CV-1191, 2008 WL 904718, at *3 (N.D. Tex. Mar. 31, 2008) (quoting *Gates v. City of Dallas, Texas*, No. 3:96-CV-2198, 1997 WL 405144, at * 1 (N.D. Tex. July 15, 1997)); *see also Lee v. Kroger Co.*, 901 F.Supp. 1218, 1224 (S.D. Tex.1995).  In *Pinkard*, two plaintiffs filed suit before receiving right-to-sue letters.  678 F.2d at 1215.  The plaintiffs received these letters four months before the trial was scheduled and before they filed the pretrial order.  *Id.*  The court reversed the district court's dismissal of the plaintiffs' suit, holding that their receipt of right-to-sue letters "prior to dismissal of their Title VII claims cured their failure to initially satisfy the condition precedent." *Id.*

The right-to-sue letters for plaintiffs Bazile, Allen, Garrett, Hines, Olford, and Runnels were issued in May 2008, before this suit was filed.  The City's motion to dismiss the Title VII claims for these plaintiffs is denied.   Because the issuance of a right-to-sue letter is not a jurisdictional prerequisite and because Title VII discovery for the six plaintiffs who have received a right-to-sue letter will overlap substantially with the discovery for plaintiff Ward, the motion to dismiss Ward's Title VII claim for failure to exhaust administrative remedies is denied at this time.  If Ward has not received a right-to-sue letter from the DOJ by the close of discovery, his Title VII claims will be subject to dismissal.

### D.    The Motion for a More Definite Statement

The City has moved in the alternative under Rule 12(e) to compel a more definite statement, arguing that "[p]laintiffs' complaint lists various laws, theories, and some grounds for

discrimination, but does not zero in on any facts which give grounds to a cause of action under § 1981 and § 1983."  (Docket Entry No.3 at 8).

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  But "the class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small – the pleading must be sufficiently intelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed."  5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1376 (2d ed. 1990).  A motion for more definite statement is used to provide a remedy for an unintelligible pleading rather than a correction for lack of detail.  *See Davenport v. Rodriguez*, 147 F.Supp. 2d 630, 639 (S.D. Tex.2001).

The complaint in this case is neither vague nor ambiguous and states the basis on which relief is sought.  The City's motion for a more definite statement is denied.

## IV.     Conclusion

This court grants the City's motion to dismiss the § 1981 claim, denies the City's motion to dismiss the § 1983 and Title VII claims, and denies the City's motion for a more definite statement.

SIGNED on November 12, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge